Filed:  February 12, 1996

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

_____

Nos. 93-5954(L)
(CR-92-260-WN)

_____

United States of America,

Plaintiff - Appellee,

versus

Romanus Nwaneri, etc., et al,

Defendants - Appellants.

_____

O R D E R

_____

The Court amends its opinion filed January 17, 1996, as follows:

On page 7, fifth full paragraph, line 4 -- the words "majority did necessarily" are corrected to read "majority did <u>not</u> necessarily."

On page 10, first full paragraph, line 7 -- the word <u>id</u>. should not be capitalized.

For the Court - By Direction

/s/ Bert M. Montague
_____
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 93-5954

ROMANUS NWANERI, a/k/a Frank
Davis, a/k/a Romero,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5020

BENNET CHIKA ABOH, a/k/a JB, a/k/a
Chika,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-92-260-WN)

Argued: September 29, 1995

Decided: January 17, 1996

Before RUSSELL and WIDENER, Circuit Judges, and
CHAPMAN, Senior Circuit Judge.

_____

Reversed and remanded for a new trial by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** William B. Purpura, Arcangelo Michael Tuminelli, Baltimore, Maryland, for Appellants. Christine Manuelian, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case involves the efforts of the district judge to avoid a mistrial, after a lengthy trial, when faced with a jury that had not come to agreement and a distraught juror who, after the jury had been excused for the night, became hysterical before leaving the courthouse and demanded to see the trial judge. This juror then complained that she could not continue as a juror, because she could not deal with the pressure and the acrimonious nature of the jury deliberations. The district judge handled this emergency with tact and compassion and persuaded the juror to return the following morning and continue deliberations. However, we find that the instruction given in this meeting and the instructions given to the jury the following morning were defective in content, and when considered under all of the circumstances were coercive. We reverse the convictions and remand for a new trial.

I.

Appellants, Bennet Chika Aboh and Romanus Nwaneri, together with one Collins Nnadozie were tried for conspiracy to distribute and possession with intent to distribute heroin in violation of 21 U.S.C. § 846 and distribution of heroin in violation of 21 U.S.C. § 841(a)(1).

2

Nwaneri was separately charged with conspiracy to import heroin in violation of 21 U.S.C. § 963, and Aboh was charged with a second count of heroin distribution. Following a lengthy trial, Nnadozie was acquitted of the only charge against him, Nwaneri was convicted on both conspiracy counts and acquitted on the charge of distributing heroin. Aboh was convicted of conspiracy to distribute and possession with intent to distribute heroin, and with distribution of heroin.

For the purposes of this appeal it is not necessary to review in any depth the evidence supporting the charges in the indictment. The case involved a large heroin conspiracy, which allegedly imported and distributed drugs that had come into this country from Singapore, Thailand, Nigeria, and the Philippines.

After lunch on August 11, 1993, the jury began its deliberations but did not reach a verdict before it was allowed to go home for the night. It resumed deliberations the following day and during the afternoon sent a note to the district judge stating, "We the jury, have failed to reach a unanimous decision on each of the counts concerning all of the defendants. Numerous attempts have failed, and numerous votes were taken. The jury is adamant. Further attempts are futile. Signed by Mr. McMullen the foreperson."

At approximately 3:30 p.m., the district judge gave the jury an Allen charge[1] and directed the jury to continue its deliberations. This charge was well balanced and not coercive, and there was no objection made to it. The deliberations continued until approximately 6:00 p.m., when the jury was excused for the night. At that time, the defendants, the attorneys, and the jurors left the courtroom.

Shortly thereafter, the courtroom clerk was called to the courthouse security station where juror No. 4, Lori Crawford, a 26-year-old female, lay on the floor in a fetal position, crying hysterically. The jury foreman, Clifton McMullen, and juror No. 10, Clara Sparrow, were with Ms. Crawford trying to calm her. Ms. Crawford insisted on meeting with the judge and did not calm down until told that he would meet with her and the other two jurors in the courtroom. The

_____

[1] Allen v. United States, 164 U.S. 492 (1896).

3

court reporter was brought in and the discussion between the judge and the jurors was placed on the record. Neither defendants, defense counsel, nor government counsel were present, and they were unaware of this meeting until they arrived at court the following day.

During this meeting, Ms. Crawford advised the judge that she was incapable of reaching a decision. She stated that the pressure, yelling and screaming were too much for her and she felt pressured to make a decision. In an effort to calm this juror, the trial judge reminded her of the oath she had taken as a juror and explained that any sentence imposed, if a guilty verdict was returned, was not the juror's concern and should not cause her any worry. He requested that the jurors go home and try to put the matter aside for the night and "give it your best shot tomorrow. That is all I am asking that you try to do."

The judge sensed that juror Sparrow was also upset and asked that she not disclose to him "how things are going in terms of numbers and that sort of thing." Ms. Sparrow responded:

> I don't agree with everything that is being said and I feel like I am being scrutinized because I don't. And I can't just be as candid as most people. It is not a cut and dry[case], no matter how clear it looks to everybody else, it doesn't -- I have doubt and I can't come in here and agree just because everybody else is agreeing or disagreeing, and I am not capable of judging anybody based on what is given here.

The judge reminded the jurors that they were not called upon to judge people, but were to look at the evidence and make a decision based upon the evidence. He advised the jurors that they should express their concerns to the rest of the jurors the following morning. The judge reminded the jurors that they would feel fresher in the morning and requested that they return and advise their fellow jurors that they wished to speak their minds without others putting them down and that each juror was entitled to his or her opinions and views of the evidence.

During his meeting with the three jurors, the judge twice reminded the jurors of the oath they had taken to reach a verdict and twice he reminded them of the time, effort and expense that had been expended

4

in the trial and would be lost if they could not continue as jurors and reach a verdict. He did not instruct them that they should not surrender their honest convictions just to return a unanimous verdict.

The following morning the judge presented the attorneys with transcripts of the meeting he had with the three jurors the previous evening. After reviewing the transcript, counsel for the three defendants moved for a mistrial, and the government consented to the motion. The government now contends that this was not a confession of error, but was a choice made between the option of proceeding with a juror who had clearly indicated she was incapable of deciding the fate of another person, and the prospect of an immediate retrial.

The trial judge denied the motion for a mistrial and then gave a supplemental instruction to the jury over the objection of defense counsel. This instruction was as follows:

> Ladies and gentlemen, I am sorry for the delay this morning. I had some other matters that had to be taken care of, and I also wanted to discuss with counsel the supplemental comments that I want to make to you, by way of some instructions, although what I am about to say to you in effect, I have already said.
>
> But first of all, I want to remind you that you have taken an oath as jurors to well and to truly try this case which means that you are duty bound by that oath to carefully and to impartially consider all of the evidence in order to reach a verdict as to guilt or innocence of each defendant on each count.
>
> All the instructions that I gave to you before are equally important and you have all of them in writing available to you to refer to, but there are a few that I want to remind you of.
>
> First, that your verdict must be considered exclusively on the evidence, or the lack of evidence. That you must not allow your decision on the evidence to be guided by sympa-

5

thy, or by any other consideration than the evidence and whether or not the evidence indicates that the government has proven guilt as to any defendant on any count beyond a reasonable doubt. And as I instructed you initially, once you let any fear or any prejudice or any bias or any sympathy interfere with your thinking, and your analysis of the evidence, then there is a considerable risk that you will not arrive at a true and a just verdict.

I also want to remind you that punishment or sentencing or the consequences of your verdict, whatever that may be, that may result from either a guilty verdict or a not guilty verdict, should not be considered in any way in your decision as to what a proper verdict is in accordance with the evidence or lack of evidence.

So, in fulfilling your duty, you are to consult with one another and deliberate on the evidence. You should remember that you are not partisans, you are judges, and you need to respect the fact that differing views than yours are worthy of consideration and analysis in the light of the evidence.

So I am going to ask that you continue deliberating with a unified determination to focus on and to discuss and to analyze the evidence. <u>Much of that is available to you in written form in the telephone transcripts and other documents that you have.</u>

I did notice that most of you took very few notes during the course of the testimony, but among the 12 of you, I am confident that you will find that your collective memory of the testimony, <u>along with the written evidence that you do have, will stand you in good stead as you continue to focus on the evidence.</u>

So with those supplemental comments, I am going to ask that you please return to the jury room and continue your deliberations. Thank You. (Emphasis added).

6

The jury went to the jury room at 11:33 a.m. and approximately one hour later returned its verdict of guilty on all counts as to Aboh and on counts 1 and 2 as to Nwaneri and acquitted Nnadozie, thereby disposing of the charges against him.

II.

We review the decision to give or not to give a jury instruction and the content thereof under an abuse of discretion standard. <u>United States v. Russell</u>, 971 F.2d 1098, 1107 (4th Cir. 1992), <u>cert</u>. <u>denied</u>, 113 S. Ct. 1013 (1993).

In <u>Allen v. United States</u>, 164 U.S. 492 (1896), the United States Supreme Court considered the form, substance and circumstances in which a supplemental charge is given to a jury that has announced to the court that it is deadlocked and cannot reach a unanimous verdict. In <u>Jenkins v. United States</u>, 380 U.S. 445 (1965), the Court held that a trial judge's statement to a deadlocked jury must be examined "in its context and under all the circumstances" to determine if it had a coercive effect. <u>Id</u>. at 446.

Here we are not dealing with an <u>Allen</u> charge per se, because these supplemental instructions did not follow all of the language of an original <u>Allen</u> instruction. In an <u>Allen</u> charge, the court informs a deadlocked jury that a new trial would be expensive for both sides; that there is no reason to believe that another jury would do a better job; that it is important that a unanimous verdict be reached; that the jurors who are in a minority should consider, without surrendering their convictions, whether the majority's position might be correct and whether their doubt is reasonable when it has not made an impression on the minds of the other jurors.

In <u>United States v. Sawyers</u>, 423 F.2d 1335 (4th Cir. 1970), we strongly recommended the use of a modified version[2] of the instruction that includes an admonition to the majority to listen to and consider any minority viewpoint, because being in the majority did not necessarily make one right.

_____

[2] Supplement to Report of the Committee on the Operation of the Jury System of the Judicial Conference of the United States.2 (1969).

The final instructions given in this case cause us concern. First, why were they given? The jury was given a full <u>Allen</u> charge at 3:30 p.m. on the preceding day, and deliberated for only two and one half hours after receiving this instruction. First thing the next morning, the jury received additional instructions over the defendant's objections and without any indication that it was still deadlocked or needed further instructions. As a result, the jury received two supplemental charges, in less than three hours of court time, urging it to come to an agreement. When these final instructions were given nothing had changed from the afternoon before, except the judge's meeting with the three jurors, and this meeting was not mentioned in the last instructions.

A supplemental instruction given so quickly after a full <u>Allen</u> charge may indicate to the jurors that the trial judge is impatient with the minority and thereby be coercive. In <u>United States v. Burgos</u>, 55 F.3d 933 (4th Cir. 1995), we held, "At the heart of our <u>Allen</u> charge jurisprudence is the basic principle that a defendant has `the right to have the jury speak without being coerced.'" <u>Id</u>. at 936 (citing <u>United States v. Sawyers</u>, 423 F.2d at 1341. We also observed, "An evaluation of a suspect <u>Allen</u> charge must be conducted, in part, from the prospective of a juror in the minority because `[t]hey always know their minority status, and if fearfully inclined, may presumably suspect a disgruntled judge can find them out.'" <u>Id</u>. at 940 (quoting <u>Sawyers</u> at page 1340).

Our second concern is with the language of the final instructions. At the beginning of these instructions, the court stated, "I want to remind you that you have taken an oath as jurors to well and to truly try this case which means that you are duty bound by that oath to carefully and impartially consider all of the evidence in order to reach a verdict as to the guilt or innocence of each defendant on each count." Later he instructs, "You need to respect the fact that differing views than yours are worthy of consideration and analysis in the light of the evidence." However, at no point does he advise the jurors not to surrender their honest convictions as to the weight or effect of evidence solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict. From his meeting with the foreman and the two female jurors the previous evening, the trial judge knew that both women were upset about the antagonism in the jury deliber-

8

ations, were most likely a small minority on the jury, and were holding out against conviction. Therefore, the instructions must be examined from the prospective of jurors Crawford and Sparrow.

Next, the final instructions in almost every sentence instruct the jurors to consider the evidence or lack of evidence carefully or impartially, and twice makes particular reference to written evidence, including telephone transcripts. Only the prosecution entered any written evidence, documents or telephone transcripts. This presents a grave problem. It is not advisable for a judge to give an instruction that calls attention to any particular type of evidence if only the government has introduced such evidence. If such a reference is made, it should be balanced by mentioning evidence introduced by the defendant or by reminding the jury that the defendant has no duty to present evidence and may stand on his claim that the government has not presented sufficient evidence to prove him guilty beyond a reasonable doubt.

In his remarks to the distraught juror and the other two jurors who were present, the trial judge reminded them of the expense on both sides that had gone into the presentation of the case, which lasted three and a half weeks, and that if they could not continue as jurors the entire effort would collapse and a retrial would be necessary. The court advised them to consider this and to express their opinions on the evidence to the other jurors and try to consider the evidence objectively and not emotionally. With knowledge that these two female jurors were probably in a minority, the judge should have reminded them not to surrender their honest convictions to reach a verdict. This would have reduced the possibility of coercion from the meeting with and comments by the trial judge.

In United States v. Rogers, 289 F.2d 433, 437 (4th Cir. 1961), we held:

> We have thus indicated that the permissibility of a direction to jurors to reexamine the views in the light of those of their fellows is dependent upon the moderating reminder of their own individual responsibility, and the necessity that any verdict be that of each of the jurors and not just that of a majority. When the moderating condition which makes the

9

> direction to reexamine their views permissible, and desirable in many cases, is omitted, then the direction becomes so likely to be coercive, that a verdict rendered promptly thereafter should not be allowed to stand.

It is also significant that within an hour of the supplemental instructions given on the third day of deliberations, the jury returned a unanimous verdict. Although one defendant was acquitted, the two appellants were convicted. The speed with which a jury returns a unanimous verdict after receiving an <u>Allen</u> charge is considered evidence of possible coercion of the minority to go along with the majority. <u>United States v. Rogers</u>, <u>id</u>. at 437.

After weighing all of the aforementioned circumstances, we find that the trial court's supplemental instructions were an abuse of discretion. They favored the prosecution in calling attention to certain evidence. Without a clear statement to protect the minority view, they were coercive. Accordingly, a new trial is required of the charges against Aboh and Nwaneri. We have not considered the sentencing question raised by appellant Nwaneri, because his conviction has been reversed and the case remanded for a new trial.

<u>REVERSED AND REMANDED FOR A NEW TRIAL</u>

10